## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE R. HAMM and
ALETHIA A. HAMM, his wife,

    Plaintiffs,

v.

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:11-CV-00614

Judge Mark R. Hornak

### OPINION

**Mark R. Hornak, United States District Judge**

Plaintiffs George R. and Alethia A. Hamm, husband and wife, allege claims for breach of contract and bad faith against Defendant Allstate Property & Casualty Insurance Company ("Allstate"). Specifically, Plaintiffs seek to recover under a homeowner's insurance policy for alleged damage to their property, and also contend that Defendant acted in bad faith in denying their insurance claim in violation of Pennsylvania law under 42 Pa.C.S.A. §8371.

Pending before the court is Defendant's Motion for Summary Judgment seeking dismissal of Plaintiffs' claims in their entirety, ECF No. 17, which Plaintiffs oppose, ECF No. 21. After careful consideration of the parties' submissions and for the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND

Unless indicated otherwise, the following material facts are undisputed. Any disputed facts will be viewed in the light most favorable to the Plaintiffs.

Plaintiffs reside at 2473 Laketon Road in Pittsburgh, Pennsylvania 15221.  Compl. ¶ 1.

Allstate is an Illinois insurance company.  Notice of Removal ¶ 9 (hereinafter "Def.'s Not.

Rem."); Answer ¶ 2.  Allstate issued a contract of insurance to the Plaintiffs that insured their

2473 Laketon Road residence and became effective on September 12, 2009.  Pls.' Resp. to Def.'s

Concise Statement of Material Facts ¶¶ 2-3, ECF No. 20 (hereinafter "Pls.' Stat. Facts"); Defs.'

Concise Statement of Material Facts ¶¶ 2-3, ECF No. 16 (hereinafter "Def.'s Stat. Facts"); ECF

No. 18-1 at 3.

The pertinent language in the insurance policy states: "**Losses We Cover Under**

**Coverages A and B:** We will cover sudden and accidental direct physical loss to property

described in Coverage A – Dwelling  Protection and Coverage B – Other Structures Protection

except as limited or excluded in this policy."  ECF No. 18-1 at 11.

The policy also contains certain exclusions:

> **Losses We Do Not Cover Under Coverage A, Coverage B, and Coverage C:**
> A. We do not cover loss to the property described in Coverage A – Dwelling
> Protection or Coverage B – Other Structures Protection consisting of or caused by
> the following: . . .
> 7. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or
> latent defect;
> b) mechanical breakdown;
> c) growth of trees, shrubs, plants or lawns whether or not such growth is above or
> below the surface of the ground;
> d) rust or other corrosion;
> e) smog, smoke from the manufacturing of any controlled substance, agricultural
> smudging and industrial operations;
> f) settling, cracking, shrinking, bulging or expansion of pavements, patios,
> foundations, walls, floors, roofs or ceilings;
> g) insects, rodents, birds or domestic animals.  We do cover the breakage of glass
> or safety glazing materials caused by birds; or
> h) seizure by government authority.

*Id.* at 17-18.  The policy continues that:

> B. We do not cover loss to the property described in Coverage A – Dwelling
> Protection or Coverage B – Other Structures Protection when:

> 1) there are two or more causes of loss to the covered property; and
> 2) the predominant cause(s) of loss is (are) excluded under items A.1 through A.8 above.

*Id.* at 19. Finally, under Section C, the policy provides that it does not cover "9. Weather Conditions that contribute in any way with a cause of loss excluded under Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C to produce a loss." *Id.* at 20.

Mr. Hamm first noticed bulging of the stone veneer wall in the rear of his home sometime in 2008 and filed a claim with Allstate on November 13, 2008. Pls.' Stat. Facts ¶ 4; Def.'s Stat. Facts ¶ 4; George Hamm Dep. 7:20-9:7, Feb. 9, 2012; ECF No. 18-8 at 2. George Quinton, an Allstate adjuster, conducted an inspection of the rear wall of the residence on November 14, 2008. Vogel Dep. 10:8-9, Feb. 9, 2012; ECF No. 18-8 at 7.[1] Quinton determined that the "damage was not covered, the pull away was caused by deterioration." ECF 18-8 at 5; Vogel Dep. 33:4-8. In the Field Documentation Template, Quinton noted that coverage was denied because it was "not sudden" and that it was "near ready to fall off liability." ECF No. 18-8 at 7. Allstate manager David Vogel explained that this meant that Quinton "observed an ongoing problem" and marked this in the Hamm file because of the "likelihood that there could be further problems down the line." Vogel Dep. 35:21-36:7.

In a letter dated November 19, 2008, Allstate denied this claim. Pls.' Stat. Facts ¶ 5; Def.'s Stat. Facts ¶ 5; ECF No. 18-3. The denial letter stated that Allstate:

> will cover *sudden and accidental* direct physical loss to property described in Coverage A Dwelling Protection and Coverage B Other Structures Protection except as limited or excluded in this policy. Losses We Do Not Cover Under Coverages A and B: We do not cover loss to the property described in Coverage A Dwelling Protection or Coverage B Other Structures Protection *consisting of or caused by*:
> 13a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
> b) mechanical breakdown;

---

[1] "Vogel" refers to David Vogel, who is an Allstate Manager.

c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

d) rust or other corrosion, mold, wet or dry rot;

e) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;

f) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

g) insects, rodents, birds or domestic animals.  We do cover the breakage of glass or safety glazing materials caused by birds; or

h) seizure by government authority.

ECF No. 18-3 at 1.  On December 3, 2008, Vogel noted in the Hamm's History Report that he informed Mrs. Hamm that the wall separation was "ongoing and not recent." ECF No. 18-8 at 6.[2]

On May 27, 2010, the rear stone veneer of the Plaintiffs' residence fell.  Pls.' Stat. Facts ¶ 11; Def.'s Stat. Facts ¶ 11; George Hamm Dep. 15:15-16:3.  Plaintiffs then filed a claim with Defendant for the damage to the house as a result of the fallen wall.  Pls.' Stat. Facts ¶ 12; Def.'s Stat. Facts ¶ 12.  In both the May 2010 claim and the earlier November 2008 claim, Plaintiffs contended that winds from a bad storm had caused the damage to the rear exterior wall of their home.  Pls.' Stat. Facts ¶ 16; Def.'s Stat. Facts ¶ 16; ECF No. 18-8 at 2; ECF No. 18-9 at 1.[3]

According to the Claim History Report, Allstate's outside adjuster Michael Madill completed a field inspection in early June 2010.  ECF No. 18-9 at 2-3.  While Mrs. Hamm did not state whether or not Madill performed an inspection and could not remember a name, she did recall that after the wall collapsed a male from Allstate came to her residence.  Alethia Hamm Dep. 55:1-9.  In his report, Madill noted that Mr. Hamm's nephew and a friend "showed me around" the property.  *Id.* at 3.  Madill reviewed the 2008 claim and a prior claim from 2010 that

---

[2] In February 2010, Plaintiffs filed a claim with Allstate because their front porch awning had collapsed and Allstate issued payment to Plaintiffs on that claim. Pls.' Stat. Facts ¶ 9; Def.'s Stat. Facts ¶ 9; George Hamm Dep. 18:22-19:8.

[3] Defendant asserts that either Mr. Hamm or his nephew contacted Allstate the week before, and then again the day before, the collapse of the wall to inform Allstate that the damage to the wall was getting worse, Plaintiffs deny these calls occurred. Def.'s Stat. Facts ¶ 17. Mr. Hamm specifically denied any contact by him or on his behalf with regard to the wall in the week leading up to the wall's collapse. Pls.' Stat. Facts ¶17; George Hamm Dep. 14:16-15:14.; Alethia Hamm Dep. 41:6-42:2, Feb. 9, 2012.

included photos that showed the bulge on the rear of the home. *Id.* Madill also asked Mr. Hamm

"if he did anything to address the condition of the wall since 2008 – he had not." *Id.* The report

then notes that the loss would not be covered because it was "not sudden." *Id.* Another entry in

the Claim History Report indicates that Madill advised Vogel that he had "inspected this loss"

and advised the insureds (the Hamms) that "there was no coverage for the failure of the stone

facing as this was an ongoing matter and not sudden and accidental." ECF No. 18-9 at 2; Vogel

Dep. 10:9-10.

Vogel stated that Madill made the initial decision to deny the claim and that he supported

it. Vogel Dep. 11:10-15. A letter dated June 8, 2010 denying the claim stated:

> **Losses We Cover Under Coverages A and B:**
> We will cover sudden and accidental direct physical loss to property described in
> Coverage A Dwelling  Protection and Coverage B Other Structures Protection
> except as limited or excluded in this policy.
> **Losses We Do Not Cover Under Coverage A, Coverage B, and Coverage C**:
> A. We do not cover loss to the property described in Coverage A Dwelling
> Protection or Coverage B Other Structures Protection consisting of or caused by
> the following:
> 7. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or
> latent defect;
> b) mechanical breakdown;
> c) growth of trees, shrubs, plants or lawns whether or not such growth is above or
> below the surface of the ground;
> d) rust or other corrosion;
> e) smog, smoke from the manufacturing of any controlled substance, agricultural
> smudging and industrial operations;
> f) settling, cracking, shrinking, bulging or expansion of pavements, patios,
> foundations, walls, floors, roofs or ceilings;
> g) insects, rodents, birds or domestic animals.  We do cover the breakage of glass
> or safety glazing materials caused by birds; or
> h) seizure by government authority.

ECF No. 18-5 at 1.

After the claim's denial, Allstate hired Jerome Paulick of Rudick Forensic Engineering to

inspect the Hamm residence on June 22, 2010. Pls.' Stat. Facts ¶¶ 14, 19; Def.'s Stat. Facts ¶ 14;

ECF No. 18-6 at 1. In his report dated June 24, 2010, Paulick stated that "[t]he weather on May 27, 2010 did not cause the eventual final collapse of the rear stone veneer wall." ECF No. 15-1 at 14. In his April 30, 2012 report, in response to Plaintiffs' expert's report, Paulick concluded that:

> The rear wall was in an ongoing state of collapse over an extended period of time and was not a sudden or accidental event. The damages were caused by wear and tear and deterioration, latent defect with an inadequate number of masonry ties, mechanical breakdown consistent with the age of the structure, and inadequate and defective maintenance.

ECF No. 15-2 at 5.

Plaintiffs then hired a contractor in November 2010 to have the wall repaired. Pls.' Stat. Facts ¶ 21; George Hamm Dep. 20:13-21:1; Alethia Hamm Dep. 47:17-48:1. The repairs took "a couple of months" to be completed. Alethia Hamm Dep. 48:1-3. The Plaintiffs were charged $22,080 for the repairs to the wall. *Id.* at 50:18-51:23.

Plaintiffs also retained an expert, Wayne F. Jacobs, P.E., to determine the cause of the damage to their residence. Pls.' Stat. Facts ¶ 18; Def.'s Stat. Facts ¶ 18. In his report dated December 15, 2011, Jacobs concluded that:

> It is my opinion that the wall ties and mortar deteriorated over time due to moisture behind the façade wall, but retained enough strength to resist wind forces during most of the life of the structure. It is my professional opinion that wind speeds at the residence on the day of the collapse were sufficient to create suction forces that resulted in the collapse of the wall.

ECF No. 14-1 at 3.[4]

In a Notice of Nonrenewal letter dated July 20, 2011, Allstate terminated Plaintiffs' homeowner's coverage. Pls.' Stat. Facts ¶ 24; ECF No. 22-1. The letter stated that the homeowner's coverage was terminated because "Our records show that, because you have not

---

[4] Jacobs reports that in his opinion, the wall would resist wind forces during "most" of its life. Jacobs did not say during what part of its life it would not, but logically given the wall deterioration that Jacobs reports, such period would be at the end of its life, i.e. at or before it fell.

yet acted on our recommendations, the condition of your insured property represents a substantial change in the risk we originally accepted." Pls.' Stat. Facts ¶ 24; ECF No. 22-1 at 1. Mr. and Mrs. Hamm stated that they did not inform Allstate of the repairs after the wall had been fixed or after they received the notice of nonrenewal. Alethia Hamm Dep. 57:2-4, 57:5-10; George Hamm Dep. 21:2-14.

## II.   PROCEDURAL HISTORY

Plaintiffs filed this suit against Defendant in the Court of Common Pleas of Allegheny County in Pennsylvania. Allstate removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1332, and now moves for summary judgment on all claims.

## III.   JURISDICTION

Although neither party questioned whether this Court has subject matter jurisdiction, this Court must raise the issue *sua sponte* when it appears that said jurisdiction may be lacking. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908); *Shaffer v. GTE N., Inc.*, 284 F.3d 500, 502 (3d Cir. 2002). Two factors must be satisfied before this Court may assume diversity jurisdiction over a civil action: (1) the controversy must be between citizens of different states, and (2) the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006) (quoting *Batoff v. State Farm Ins.*, 977 F.2d 848, 851 (3d Cir. 1992)). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

There is complete diversity between Plaintiffs and Defendant in the underlying action. Plaintiffs George and Alethia Hamm are citizens of the Commonwealth of Pennsylvania.

Compl. ¶ 1.  Defendant Allstate is incorporated in and has its principal place of business in Illinois. Def.'s Not. Rem. ¶ 8-9; Compl. ¶ 2.  However, the submissions to this Court give rise to some doubt about the amount in controversy.  In the Complaint, Plaintiffs seek relief for breach of contract "in an amount exceeding $25,000.00", Compl. ¶ 24, and for bad faith "in an amount exceeding $25,000.00." Compl. ¶ 27.  In its Notice of Removal Allstate in conclusory fashion states that Plaintiffs seek damages which "clearly exceed $75,000." Def.'s Not. Rem. ¶ 11.  Plaintiffs did not dispute that assertion.

A removed case must be remanded if it appears to a legal certainty that the plaintiff cannot recover more than the federal jurisdictional amount. *Frederico*, 507 F.3d at 195; *see also St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).  In removal cases, the amount in controversy analysis begins with a reading of the complaint filed in the state court as of the time the notice of removal was filed. *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004).  Where the complaint is silent, ambiguous, or does not seek damages in a precise monetary amount, the court may look to the notice of removal and, on its own motion, may make an independent evaluation of the claim from the record before it. *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993).

The court's determination of the amount in controversy "is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights." *Angus*, 989 F.2d at 146.  Moreover, estimates of "amounts recoverable must be realistic.  The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Samuel-Bassett*, 357 F.3d at 403.

Upon a careful review of the pleadings in this case, the Court cannot say to a legal

certainty that the plaintiff could not recover more than the statutory amount of $75,000. A plaintiff is permitted to aggregate two or more of his or her claims against a single defendant. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969) ("Aggregation has been permitted . . . in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant."). While Plaintiff's claimed damages for the breach of contract claim for repair costs is well below the statutory jurisdictional amount, based on the actual cost of the repairs, Count II's claim alleges bad faith under Pennsylvania's Bad Faith insurance statute which allows for recovery of punitive damages, interest, attorney's fees, and costs.[5] Punitive damages are properly considered in determining the amount in controversy. *Packard v. Provident Nat'l. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993); *see also Frederico*, 507 F.3d at 199. However, if the claim is "'patently frivolous and without foundation' because such damages are unavailable as a matter of law" it must be stricken from the amount in controversy. *Packard*, 994 F.2d at 1046 (quoting *Gray v. Occidental Life Ins. Co.,* 387 F.2d 935, 936 (3d Cir. 1968)). Therefore, "[i]f appropriately made . . . a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) *overruled in part on other grounds by Marshall v. Marshall,* 547 U.S. 293, 310–11 (2006). An award of punitive damages just over two times the claimed compensatory damages in this case would put the Plaintiffs' claim over the jurisdictional threshold.[6]

---

[5] Pennsylvania's Bad Faith insurance statute, 42 Pa.C.S.A. § 8371, provides: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer."

[6] In calculating punitive damages, the Supreme Court has declined to impose a bright-line ratio which a punitive

Moreover, although 28 U.S.C. § 1332 excludes "interests and costs" from the amount in controversy, the Third Circuit has held that potential attorney's fees must be considered if such fees are available to successful plaintiffs under a statutory cause of action. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997). *See* 42 Pa. C.S.A § 8371(3) (allowing attorney fees).

In this case involving a statutory claim of bad faith, the demand for punitive damages and attorney's fees could easily put the amount in controversy over the jurisdictional threshold. Based on the pleadings, the Court cannot conclude to a legal certainty that the amount in controversy would not exceed $75,000, or that the bad faith claim is patently frivolous. Accordingly, the Court is satisfied that it has subject matter jurisdiction, and may reach the merits of Allstate's Motion for Summary Judgment.

## IV.  LEGAL STANDARD

The purpose of summary judgment is "to dispose of factually unsupported claims or defenses." *Omnipoint Comm. Enter., L.P. v. Newtown Twp.*, 219 F.3d 240, 242 (3d Cir. 2000) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Accordingly, to survive a motion for summary judgment, the non-movant must establish that there is indeed a genuine issue of material fact, which requires the action to proceed to a trier of fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). An issue is "genuine" only if it would prevent a rational factfinder, when viewing the record as a whole, from granting judgment for the moving party. *Id.* at 586. Regarding materiality, the substantive law identifies which facts are

---

damages award cannot exceed; however, punitive damages are usually limited by due process considerations to a single digit ratio between punitive and compensatory damages. *State Farm Mut. Auto Ins. v. Campbell*, 538 U.S. 408, 425 (2003).

"material," meaning only those facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Within the framework of Rule 56, the moving party must first demonstrate the absence of a genuine issue of material fact by citing to relevant portions of the record, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, and interrogatory answers." Fed. R. Civ. P. 56(c)(1). *See also Celotex*, 477 U.S. at 325. If the movant meets his burden, the non-movant must then point to evidence supporting the existence of a genuine issue of material fact. *El v. Se. Pa. Tramp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2009). But "[t]he non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." *Id.* The court reviews all evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-movant's favor. *Omnipoint*, 219 F.3d at 242 (citing *Anderson*, 477 U.S. at 257); *Matreale v. N.J. Dept. of Military & Veterans Affairs*, 487 F.3d 150, 152 (3d Cir. 2007).

Furthermore, in considering a summary judgment motion, the Court is not confined to the cited record materials and may consider all materials in the record. Fed. R. Civ. P. 56(c)(3). Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. Pro. 56(e)(2-3).

## V. DISCUSSION

Plaintiffs assert two causes of action against Defendant: breach of contract and bad faith

under 42 Pa.C.SA. § 8371.

## A.  **Breach of Contract**

Under Pennsylvania law, an insurance contract is governed by the law of the state in which it was created. *Meyer v. CUNA Mut. Ins. Soc.,* 648 F.3d 154, 164 (3d Cir. 2011). The insureds are Pennsylvania residents, the loss occurred in Pennsylvania, and the policy was delivered in Pennsylvania. Therefore, the Court will apply Pennsylvania law to resolve this dispute.

To succeed on a claim for breach of contract, Plaintiffs must prove: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (quotations omitted). It is well settled that:

> in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does.

*State Farm Fire & Cas. Co. v. Estate of Mehlman,* 589 F.3d 105, 111 (3d Cir. 2009); *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.,*735 A.2d 100, 106 (Pa. 1999).

The interpretation of the language of an insurance contract is a question of law properly decided by the Court. *Scottsdale Ins. Co. v. City of Easton,* 379 Fed. Appx. 139, 143 (3d Cir. 2010); *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir. 1997). "The goal of insurance contract interpretation is to 'ascertain the intent of the parties as manifested by the language of the policy.'" *Scottsdale*, 379 Fed. Appx. at 143 (quoting *Visiting Nurse Ass'n. v. St. Paul Fire & Marine Ins. Co.,* 65 F.3d 1097, 1100 (3d Cir. 1995)). "Where the provision of the policy is

ambiguous, the policy provision is construed in favor of the insured and against the insurer, the

drafter of the instrument. If the policy language is clear and unambiguous, we give effect to the

language of the contract." *Bateman v. Motorists Mut. Ins. Co.,* 590 A.2d 281, 283 (Pa. 1991).

*See also CUNA,* 648 F.3d at 164 ("Where, however, the language of a contract is clear and

unambiguous, a court is required to give effect to that language.") (quoting *Harleysville,* 735

A.2d at 106). "A contract provision is ambiguous if it is reasonably susceptible of different

constructions and capable of being understood in more than one sense." *McMahon v. State Farm

Fire & Cas. Co.,* No. 06-3408, 2007 WL 1377670, at *3 (E.D. Pa. May 8, 2007) (citing *Steele v.

Statesman Ins. Co.,* 607 A.2d 742, 743 (Pa. 1992)). "The courts 'should read policy provisions

to avoid ambiguities if possible and should not torture the language to create them.'" *Id.*

(quoting *Spezialetti v. Pac. Employers Ins. Co.,* 759 F.2d 1139, 1142 (3d Cir. 1985)).

        The parties do not dispute the existence of an insurance contract and its provisions or

that, if coverage exists, Plaintiffs suffered damages; however, they dispute whether a breach

occurred. Allstate argues that the breach of contract claim must fail for three primary reasons.

First, Allstate contends that Plaintiffs failed to prove that the loss was "sudden and accidental."

Def.'s Br. Summ. J. at 4. Allstate maintains that as a result of the 2008 claim, Plaintiffs were on

notice that a loss similar to the incident that occurred on May 27, 2010 was likely to occur. *Id.*

Thus, because Plaintiffs had actual notice and should have expected "a possible major failure",

the wall collapse was not "sudden and accidental" as required for coverage by the terms of the

policy. *Id.* at 7. Second, according to Allstate, the loss is not covered because it falls under the

exclusionary clauses which include "deterioration" and "wear and tear" among others. *Id.*

Third, Allstate argues that even if weather conditions contributed to the wall's collapse, the

damage is not covered if one of the exclusions was a predominant cause of the loss or if the

weather condition combined in "any way" with an excluded cause of loss. *Id.* at 9; ECF No. 18-1 at 19-20. Allstate, however, candidly admits that "the causation issue may be a question of fact for jury consideration." Def.'s Br. Summ. J. at 9.

Plaintiffs argue that the loss was "sudden and accidental" and is therefore covered by the insurance policy. Pls.' Br. Summ. J. at 4. Plaintiffs explain that even if they were aware that the wall needed some maintenance, it is an issue of fact as to whether they should have "been put on notice of an impending collapse of the rear wall." *Id.* Furthermore, Plaintiffs contend that "sudden and accidental" is an ambiguous term and issues of fact prohibit summary judgment. *Id.* at 4-5. Plaintiffs' primary evidentiary material is an expert engineering opinion as to the cause of the wall's collapse. The expert concluded that:

> It is my opinion that the wall ties and mortar deteriorated over time due to moisture behind the façade wall, but retained enough strength to resist wind forces during most of the life of the structure. It is my professional opinion that wind speeds at the residence on the day of the collapse were sufficient to create suction forces that resulted in the collapse of the wall.

ECF No. 14-1 at 3. Plaintiffs also point out that Vogel, in his deposition, admitted that "[i]f [the loss] was deemed to be damage caused by wind, yes, we would cover the loss." Vogel Dep. 33:12-15.

Conversely, Allstate's expert concluded that "[t]he weather on May 27, 2010 did not cause the eventual final collapse of the rear stone veneer wall." ECF No. 15-1 at 14. He explained that:

> [t]he rear wall was in an ongoing state of collapse over an extended period of time and was not a sudden or accidental event. The damages were caused by wear and tear and deterioration, latent defect with an inadequate number of masonry ties, mechanical breakdown consistent with the age of the structure, and inadequate and defective maintenance.

ECF No. 15-2 at 5.

Viewing these facts in the light most favorable to the Plaintiffs, the Court concludes there

is, at minimum, a genuine issue of fact as to whether the wall's collapse was "sudden and

accidental." However, even accepting Plaintiffs' version of events, summary judgment must

nonetheless be granted because Allstate points to an exclusionary provision which excludes the

claim from coverage based on the record adduced by the parties. Even if the wall's collapse was

"sudden and accidental", and even assuming wind was part of or the predominant cause,

Plaintiffs' own evidentiary support forecloses recovery.

Section C of the policy states that it does not cover damage "consisting of or caused by

the following: . . . 9. *Weather Conditions* that *contribute in any way* with a *cause of loss excluded*

under Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C to produce a

loss." ECF No. 18-1 at 19-20 (emphasis added). Some of the "cause of losses" that are

explicitly excluded in the policy include: "7. a) wear and tear, aging, marring, scratching,

deterioration, inherent vice, or latent defect." ECF No. 18-1 at 18. Allstate cites to this section,

albeit briefly, to argue that such exclusionary clause applies to the claim. Def.'s Br. Summ. J. at

9. Plaintiffs fail to rebut its application in any way. The Court concludes that this clause is

unambiguous.[7] Wind has a plain and ordinary meaning that squarely fits under the category of

"weather conditions", and a contrary meaning is not given in the definitions section of the policy.

Furthermore, "contribute in any way" cannot logically be argued to not exclude coverage of a

loss where a weather condition and an excluded cause of loss are combined. Because the

contract did not expressly limit the meaning of "weather conditions", "wind", or "contribute in

any way", the Court is unable to alter the parties' original intent as manifested in the clear and

explicit language of the contract. *See Nationwide Life Ins. Co. v. Commonwealth Land Title Ins.*

---

[7] While Pennsylvania state courts have not yet addressed whether or not this phrase is ambiguous, a district court in New Jersey rejected an argument that this phrasing was ambiguous. *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 352 n.1 (D.N.J. 1999).

*Co.*, 687 F.3d 620, 624 (3d Cir. 2012) ("caselaw requires us to follow the plain language of the [clause]"); *CUNA,* 648 F.3d at 163 ("A policy must be read as a whole and its meaning construed according to its plain language.").

Giving effect to the language of C.9., if wind (plainly a weather condition) "contributes in any way" with deterioration (a plainly excluded cause) "to produce a loss", then such loss is excluded from policy coverage. ECF No. 18-1 at 20. Plaintiffs contend that the wall's collapse was caused by wind. Pls. Stat. Facts ¶ 16; Def. Stat. Facts ¶ 16; ECF No. 18-8 at 2; ECF No. 18-9 at 1. Although Allstate argues that wind did not (and could not)[8] cause the wall's collapse, Allstate's expert report (and the other record evidence) provides uncontradicted evidentiary support that deterioration at least contributed to the loss. ECF No. 15-1 at 14; ECF No. 15-2 at 5. Moreover, while Plaintiffs' expert concluded that the wind could have caused the wall's collapse, he also determined that parts of the wall had in fact significantly deteriorated. ECF No. 14-1 at 3. Plaintiffs do not argue that deterioration was not present, nor do they provide any evidentiary support that tends to demonstrate that deterioration was not involved in the collapse. Consequently, any deterioration plus any amount of wind, even if wind is not the predominant cause, results in a loss facially excluded from the scope of the insurance policy. There are no facts in the record from which a reasonable jury could conclude that wind was the sole cause or that deterioration was not involved, and all of the record evidence (even that advanced by Plaintiffs) recognizes that deterioration was to some significant degree present. Therefore, Defendant's motion for summary judgment on the breach of contract claim is granted.

**B.**   **Bad Faith**

The Pennsylvania bad faith statute, 42 Pa.C.S.A. § 8371, provides in its entirety:

---

[8] Importantly, Allstate's expert posits that there was not any bad weather anywhere near Pittsburgh on the day in question, and Plaintiffs' expert does not point to any wind-generating weather conditions with any specificity. ECF No. 15-1 at 14; 15-2 at 2-5; ECF No. 14-1 at 3.

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

To succeed on a bad faith claim, a plaintiff-insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994). Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999); *see also Terletsky,* 649 A.2d at 688. "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.,* 56 F.Supp.2d 580, 587 (E.D. Pa. 1999)) (quotations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Pilosi*, 393 F.3d at 367 (citing *Kosierowski v. Allstate Ins. Co.,* 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)); *see also Anderson*, 477 U.S. 242, 248 (1986) ("we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the

directed verdict and summary judgment stages.").

Our courts have held that "[r]esolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage." *Gold v. State Farm Fire & Cas. Co.*, No. 11-1187, 2012 WL 3020352, at *8 (E.D. Pa. July 24, 2012). "However, if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Id.* at *9. This is because section 8371 claims generally exist apart from the underlying contract claims. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3d Cir. 1997) (42 Pa.C.S. § 8371 provides an "independent cause of action to an insured that is not dependent upon success on the merits, or trial at all, of the contract claim") (*quoting Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa. Super. Ct. 1997) (quotations omitted); *Fabrikant v. State Farm Fire & Cas. Co.*, No. 3:11-CV-438, 2012 WL 1677293, at *10 (M.D. Pa. May 14, 2012) (granting summary judgment on breach of contract claim but also analyzing bad faith claim); *Moss Signs, Inc. v. State Auto. Mut. Ins. Co.*, No. 08–164, 2008 WL 892032, at *4 (W.D.Pa. Apr. 2, 2008) (holding that because bad faith was alleged in investigation and in denial of coverage, the plaintiff could "theoretically succeed on either or both" of the claims).

While we grant summary judgment in favor of Defendant on the breach of contract claim, the Court will nonetheless address the bad faith claims relating to the denial of coverage and will then turn to Plaintiffs bad faith claims alleging inadequate investigation and abusive claims handling practices.

### 1. *Denial of Coverage*

The first prong of the *Babayan* test is objective, "so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot" as a matter of law

be bad faith. *Wedemeyer v. U.S. Life Ins. Co. in City of New York*, No. 05-6263, 2007 WL 710290, at *9 (E.D. Pa. Mar. 6, 2007); *see also Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 n. 3 (E.D. Pa. 1998) (a defendant may prevail at the summary judgment stage by "affirmatively demonstrating a reasonable basis for its actions."); *Bostick*, 56 F. Supp. 2d at 587 (E.D. Pa. 1999) ("Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law."). In fact, the insurance company "need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Mann v. UNUM Life Ins. Co. of Am.*, No. 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003).

Plaintiffs argue that Allstate acted in bad faith in denying the claim by "presumably" relying solely on a 2008 claim regarding the rear wall. Pls.' Br. Summ. J. at 9. Moreover, Plaintiffs allege that Allstate failed to give a specific reason for the claim's denial until after litigation began and that Allstate's denial letter stated that the claim was denied under "one, some or all" of the eight coverage exclusions listed under Paragraph A.7 of the "Losses We Do Not Cover" section of the policy. *Id.* at 11; ECF No. 18-5 at 1-2.

The gravamen of Defendant's argument is that Plaintiffs lack evidence to support their claim that Allstate acted in bad faith and that Allstate had a reasonable basis to deny Plaintiffs' claim as a result of the 2008 claim, the claims the week and day before the wall fell, and its expert report. Def.'s Br. Summ. J. at 12-14.

While Defendant alleges that either George Hamm or his nephew contacted Allstate the week before and then again the day before the collapse of the wall to inform Allstate that the

damage to the wall was getting worse, Plaintiffs deny this assertion. Def.'s Stat. Facts ¶ 17; ECF No. 18-8 at 6; Pls.' Stat. Facts ¶ 17. Plaintiffs note that Mr. Hamm specifically denied any contact by him or on his behalf with regard to the wall in the time leading up to the wall's collapse. Pls.' Stat. Facts ¶ 17; George Hamm Dep. 14:16-15:14; Alethia Hamm Dep. 41:6-42:2. In considering a summary judgment motion, such facts must be viewed in a light most favorable to the non-moving party.

However, this dispute is not material because, even if Allstate had not been contacted during the week leading up to the wall's collapse, the record amply demonstrates that Allstate had a reasonable basis to deny coverage under the policy. Mr. Hamm first reported the bulging of the stone veneer in the rear of his home to Allstate in November 2008. Pls.' Stat. Facts ¶ 4; Def.'s Stat. Facts ¶ 4; George Hamm Dep. 7:20-9:7. While they did not give a name, both Mr. and Mrs. Hamm recalled that a representative from Allstate came to their residence after the filing of this claim. Alethia Hamm Dep. 25:11-13; George Hamm Dep. 10:13-11:3. According to the record, George Quinton, an Allstate adjuster, conducted an inspection of the rear wall of the residence. Vogel Dep. 10:8-9; ECF No. 18-8 at 7. Quinton determined that the "damage was not covered, the pull away was caused by deterioration." ECF 18-8 at 5; Vogel Dep. 33:4-8. In the Field Documentation Template, Quinton noted that coverage was denied because it was "not sudden" and that it was "near ready to fall off liability." ECF No. 18-8 at 7. Allstate Manager David Vogel explained that this meant that Quinton "observed an ongoing problem" and marked this in the Hamm's file because of the "likelihood that there could be further problems down the line." Vogel Dep. 35:21-36:7. In a letter dated November 19, 2008, Allstate denied this claim. Pls.' Stat. Facts ¶ 5; Def.'s Stat. Facts ¶ 5; ECF No. 18-3. On December 3, 2008, Vogel noted in the History Report that he informed Mrs. Hamm that the wall separation was "ongoing and not

recent." ECF No. 18-8 at 6.  As a result of this inspection, Allstate had determined and was on

notice that the bulging wall was an ongoing issue that would likely re-surface in the future.

Twenty months later, on May 27, 2010, the rear wall of the Hamm residence collapsed.

Compl. ¶ 10.  According to the Claim History Report, Allstate's outside adjuster Michael Madill

completed a field inspection in early June 2010.  ECF No. 18-9 at 2-3.[9]  While Mrs. Hamm did

not state whether or not the Allstate representative performed an inspection and could not

remember a name, Mrs. Hamm did recall that after the wall collapsed a male representative from

Allstate came to her residence.  Alethia Hamm Dep. 55:1-9.  In his report, Madill noted that Mr.

Hamm's nephew and a friend "showed me around" the property.  *Id.* at 3.  Madill reviewed the

November 2008 claim and a prior claim from February 2010 that included photos that showed

the bulge on the rear of the home.  *Id.*  Madill also asked George Hamm "if he did anything to

address the condition of the wall since 2008 – he had not."  *Id.*  The report then notes that the

loss would not be covered because it was "not sudden."  *Id.*  Another entry in the Claim History

Report indicates that Madill advised Vogel that he had "inspected this loss" and advised the

insureds that "there was no coverage for the failure of the stone facing as this was an ongoing

matter and not sudden and accidental."  ECF No. 18-9 at 2; Vogel Dep. 10:9-10.  Vogel stated

that Madill made the initial decision to deny the claim and that he supported it.  Vogel Dep.

11:10-15.  A letter from Allstate dated June 8, 2010 denied the claim.  ECF No. 18-5.  This

record demonstrates that prior to the denial of that claim, Allstate completed an inspection of the

property to assess the possibility of coverage.

Even without considering the disputed phone calls alleged to have taken place the week

---

[9] While neither party cites to the reference to Mr. Madill's inspection in the record, "[a]s a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 n.4 (11th Cir. 1985) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2721 (1983)); Fed. R. Civ. Pro. 56(c)(3) ("*Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.").

leading up to the loss, the inspections following the November 2008 claim and immediately after the wall's collapse plainly offer a reasonable basis for Allstate's denial of the claim. *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 307-08 (3d Cir.1995) (an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions); *Babayan,* 430 F.3d at 138 (3d Cir. 2005) ("Pennsylvania law provides that it is not bad faith to conduct a thorough investigation into a questionable claim.").

Furthermore, Plaintiffs have not produced record evidence that would show by clear and convincing evidence that Allstate did not have a reasonable basis to deny the claim. A plaintiff-insured must prove, by clear and convincing evidence "that the insurer did not have a reasonable basis for denying benefits under the policy." *Babayan,* 430 F.3d at 137 (3d Cir. 2005). Without record support, Plaintiffs state that "Allstate, presumably on the basis that it had previously been made aware of a claim with regard to the rear wall in 2008, determined that the collapse" was not covered. Pls.' Br. Summ. J. at 9. While Plaintiffs deny that any calls were placed by or on behalf of the Hamms the week leading up to the collapse, Plaintiffs fail to deny that Madill inspected the property immediately after the collapse and before the coverage was denied, nor do they produce evidence that Madill's inspection was facially inadequate. Apart from Madill's visit, Plaintiffs also fail to show that it was unreasonable for Allstate to consider the information determined during the November 2008 inspection. Considering Plaintiffs' heightened evidentiary burden, Plaintiffs have failed to adduce sufficient evidence from which a reasonable jury could conclude by clear and convincing evidence that Allstate lacked a reasonable basis for denying the claim. Because the Court concludes that Plaintiffs are unable to sufficiently demonstrate the first prong of the *Babayan* test, the Court need not address the second prong, as both are required for a successful bad faith claim.

### 2. Bad faith investigation and claims handling

Plaintiffs also suggest a bad faith lack of investigation into the facts by alleging that Allstate denied the claim by "presumably" relying solely on the 2008 claim. Pls.' Br. Summ. J. at 9. Courts have held that an insurer must "properly investigate claims prior to refusing to pay the proceeds of the policy to its insured." *Gold v. State Farm Fire & Cas. Co.*, No. 11-1187, 2012 WL 3020352, at *8 (E.D. Pa. July 24, 2012) (quoting *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. Ct. 2007)). Bad faith may occur "when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue." *Corch Const. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Pa. Commw. Ct. 2003).

As discussed above, however, the record indicates that Allstate performed an inspection of the Hamm residence after the wall collapsed and considered information from the previous February 2010 and November 2008 claims for its investigation. Although neither party specifically addressed the inspection that the record reveals took place in June 2010, Plaintiffs do not deny that this inspection took place or that it was sufficient. Moreover, Plaintiffs have not demonstrated that Allstate's consideration of the two previous claims was somehow wrong or misplaced. Looking at the record as a whole, in light of Plaintiff's "commensurately high" burden, *Pilosi*, 393 F.3d at 367, there is no evidence that suggests that Allstate's investigation prior to the denial of the claim was inadequate or unreasonable.

Moreover, Plaintiffs allege that Defendant acted in bad faith by retaining an engineer only "after denying coverage, to provide specious support" for the denial. Compl. ¶ 26. However, Plaintiffs provided no evidence that Allstate's failure to employ an expert to determine the cause of the loss prior to the denial rises to the level of bad faith. "At most, Allstate erred in

not engaging an expert to further examine the damage [prior to the initial denial], but that mistake in judgment falls far short of bad faith." *Rock-Epstein v. Allstate Ins. Co.*, No. 07-2917, 2008 WL 4425059, at *7 (E.D. Pa. Sept. 29, 2008); *see Babayan,* 430 F.3d at 137 (noting that mere negligence or bad judgment is not bad faith). Considering the evidence in the light most favorable to Plaintiffs, and considering Plaintiffs' heightened evidentiary burden at trial, Plaintiffs have failed to adduce sufficient evidence from which a reasonable jury could conclude that Allstate lacked a reasonable basis for its handling of the claim.

Plaintiffs also allege that Allstate only hired Paulick to "to provide support for the decision that had already been made" and that this too was bad faith. Pls.' Stat. Facts ¶ 19. After denying Plaintiffs' claim, Allstate hired Paulick to inspect the Hamm residence. Pls.' Stat. Facts ¶¶ 14, 19; Def.'s Stat. Facts ¶ 14; ECF No. 18-6 at 1. While Plaintiffs disagree with Paulick's conclusions, they do not suggest that his inspection was inadequate or that it was unreasonable for Defendant to rely on his report to deny the claim. Plaintiffs also do not cite to any record evidence which attacks Paulick's methodology or conclusions, or that his determinations were biased or a mere façade. On the other hand, courts have recognized that an insurer's reasonable reliance on an engineering expert's report for a coverage decision does not constitute bad faith. *See El Bor Corp. v. Fireman's Fund Ins. Co.,* 787 F.Supp.2d 341, 349 (E.D. Pa. 2011) (insurance company's reliance on engineer report's findings as a basis for denial of coverage "provide[d] reasonable grounds to deny benefits"). "Moreover, even if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them." *Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 390 (W.D. Pa. Aug. 28, 2006) (citing *Pirino v. Allstate Ins. Co.*, No. 3:04CV698, 2005 WL 2709014, at *5 (M.D. Pa. Oct. 21, 2005). As such, Plaintiffs claim of bad faith with respect to Allstate's

use of an expert after denying the claim must fail.

Finally, Plaintiffs contend that Defendant's claims handling practice was "dilatory and rude" and amounted to bad faith on the part of Allstate. Compl. ¶ 26. Section 8371 is not restricted to bad faith in denying a claim but may extend "to the insurer's investigative practices." *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999). Mrs. Hamm stated in her deposition that Allstate employees were "nasty" and "had an attitude that they didn't care." Alethia Hamm Dep. 53:19-54:8; George Hamm Dep. 26:1-12. While this Court does not condone discourteous behavior if it occurred, Plaintiffs have failed to point to any authority that this asserted insensitivity constitutes bad faith.

The Court concludes that, even when the record is considered in the light most favorable to them, Plaintiffs have not produced sufficient evidence from which a reasonable jury could find by clear and convincing evidence that Allstate acted in bad faith on any of such claims. Thus, summary judgment regarding Plaintiff's claims of bad faith will be entered in the Defendant's favor.

## VI. CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment is granted. An appropriate order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: November 6, 2012
cc: All counsel of record